Good morning, everybody. We have three cases here this morning, and we'll call the first case Emmett Grier v. Erie County District Attorney et al. Mr. Ketubi? You may proceed. Judge Fischer, I'd like to reserve three minutes for my rebuttal, please. That request will be granted. May it please the court. Appellant in this case is seeking access to physical evidence within the state's possession, which he plans to then submit for DNA testing. The court below entered a dismissal in this action because, in its view, success for appellant here would necessarily demonstrate the invalidity of his conviction or shorten his sentence. How did Dotson change tactics? What Dotson did, Your Honor, was it provided a bookend to the Supreme Court's earlier jurisprudence, which began in Pricer v. Rodriguez. It provided a very important bookend, in our opinion. Cases like Pricer now reside on one side of the continuum. Pricer held that a Section 1983 action seeking reinstatement of good time credits for parole necessarily needed to be brought under habeas because success for the appellant would shorten his sentence. That's because, to be more clear, there was no intervening event between success in 1983 and plaintiff's release. Now, on the other side of the continuum, you have cases like Dotson. Dotson held that in a Section 1983 action, seeking different procedures on parole did not run afoul of Heck and need not be brought under habeas simply because there was an intervening event between success in 1983 and plaintiff's ultimate release. In Dotson, that intervening event was a parole hearing, at which point the Parole Board could grant or deny parole within its discretion. And your intervening event will be? We actually, I feel, reside even further along the continuum than the bookend in Dotson. In Dotson, the plaintiff was one step away between success here in 1983 and ultimate release. He had to have a parole hearing. This case is even further attenuated. If we get the evidence we seek, if we are successful here or in the district court below, we would stand with the evidence. But you're still planning to challenge your underlying conviction? What we plan to do at that point is then test the evidence. Then we have to get the attest back. That test could reveal one of three things. It could show that my client is innocent. It could show that he's guilty. Or it could be inconclusive. Only one of those outcomes could possibly lead to another procedure, likely in another court, to then challenge the underlying conviction or shorten his sentence. Are you going to face a bar under that new state law? The one that says the effect that you've had a confession. Well, the Superior Court, I think it was, interpreted that to mean that actual innocence means if you confessed to the crime, you're barred. Is that going to be a problem? That was the bar we've already faced. It's not really an issue in this case, but I just wanted to... That's the bar we already faced, Your Honor. My client, proceeding per se, went entirely through post-conviction proceedings and was denied the evidence he seeks because he confessed. But is that going to reappear in this case somehow? I don't think so, simply because we will be arguing to the court below on the merits of the constitutional claim, which we think should be addressed. How does Osborne, how does the Supreme Court decision in Osborne affect your case? Osborne held. To be sure, Osborne took certain things away. First of all, it assumed without deciding the question on review here. It did say that there's no substantive due process violation here. But what it did say... Where does that leave you in light of the Pennsylvania DNA statute? It leaves us with a procedural due process claim. And if I can read from... What would your claim under procedural due process be in light of the Pennsylvania DNA statute? Our claim would be that the rules which have barred my client thus far, and just to clarify, my client had his post-conviction proceedings before the statute went into effect. So my client was barred under the common law version of the DNA access laws. Our claim below would be that the rules which have barred our access to this evidence run afoul of fundamental fairness as expressed by Judge Roberts in Osborne. Now, not only did the Osborne court say... How? We have a liberty interest. This is what Osborne said, that we have a liberty interest in accessing the state procedures to acquire DNA evidence post-conviction, simply because the Commonwealth has enacted these procedures. Our liberty interest is meaningful access to those procedures. What the state has done here has imposed what we feel is an arbitrary bar, such that if you confessed pre-conviction, you have thereby waived any post-conviction evidence. Let's say the Pennsylvania Supreme Court, in Wright, agrees with you and says that the statute has an impermissible confession bar contained therein. Where would that leave your case if we sent this back to the district court? I think it would make our case even stronger. Wouldn't it make your case moot? I don't think so. Because wouldn't you then have a state remedy? Well, Pennsylvania has an incredibly high bar to a successive post-conviction petition. And it's unlikely whether a change in the law would give us access to a successive PCRA petition. They don't have an actual innocence exception? They have a manifest injustice exception. I don't know whether we could fall under that. Perhaps we could. But as we stand right now, my client remains barred by the confession bar, still in jail, without access to this evidence, which we feel is a violation of the Constitution. I'll give you an easy question. Are these questions that I've been asking Judge Hardman followed up on premature? Well, I think they definitely are. The constitutional question wasn't reached by the court below. It wasn't briefed below? It's not really before us. It's not really before you. We would ask that... It was raised, somebody raised it in a responsive... Yeah, I think that the DA has raised it, saying that, well, we would have difficulty below. And to be sure, Justice Roberts, the bar, the threshold we have to meet in Osborne, is a substantial bar, but we do think we can meet it. And here's... I'm curious about something. Suppose it wasn't a confession bar. Suppose it was a guilty plea bar. It'd be a little harder to argue. I think so. It might be a little harder to argue that. But there are situations. The Supreme Court's 1983 decision in Procease, for instance, an individual was subjected to a fourth amendment search, a violation of a fourth amendment search. He eventually pled guilty, and the Supreme Court held that he still had a 1983 action, based upon that fourth amendment violation, even though he pled guilty below. True. I'm not entirely analogous here, but there are different incentives that someone has in state court to pleading guilty that don't necessarily waive your federal rights post-conviction. I didn't mean to get you off topic, but I just wanted to get your reaction. Getting back on topic a second. The First Circuit to have taken up this issue that you have before us was the Fourth Circuit and Harvey V. Hoare. Right. Could you give us a little... Could you give us your take on their analysis and whether or not that is still good analysis in light of subsequent Supreme Court jurisprudence? I don't think that is good analysis. And not only was it the Fourth Circuit, it was the Fifth Circuit as well, came down on that side before Dotson. Before Dotson, the Eleventh Circuit. So there was a 2-1 split. Since Dotson, three circuits have addressed this issue. The Seventh, the Second, and the Ninth. Every single one of them have come down on my side and said that this is no longer a viable circuit split. Dotson settled this question. The decision below stands alone in the federal courts. Not only in the circuits, but also in the district courts, to my knowledge. And if affirmed, would provide a very deep split in the circuits as of this point. If we allow this, could we just make DNA a special situation? Would we have to allow 1983 suits for other types of exculpatory evidence? Well, I think this is what Justice Alito was hinting at in his concurring opinion. It was in Osborne. And I think from the way I read his concurring opinion, it was that seeking exonerating evidence is something different than parole, which is what Dotson was talking about. It's something that should fall within the core of habeas corpus. And thus it doesn't need to be under this HEC. The HEC standard of necessarily demonstrate to see where it falls. But one thing that's remarkable about... I'll talk about the practical implications. We all know what habeas corpus looks like in federal courts. What do we have? Probably, if I was going to guess, 99% of them probably don't ultimately wind up accomplishing anything. I'm not saying that they don't serve a valid purpose. I'm just saying that's reality. What are we going to create here? I don't think there's any floodgates argument here. This sort of action has been viable in at least 4 circuits for over 5 years. And we don't see any floodgates of litigation. And especially after Osborne, we won't see it. Because what Justice Roberts did was he created a cause of action in the procedural due process that was expressly bottomed on the plaintiff exhausting his state remedies. William Osborne didn't get the evidence he sought before the Supreme Court because he did what the justices in HEC didn't want people to do. He completely sidestepped the state procedures and went straight to federal court. And Justice Roberts said, no, if you do that, you can't demonstrate the fundamental unfairness or inadequacy of the state procedures. So necessarily, anyone who's successful under this new Osborne claim, I'll call it for lack of a better term now, will have gone through state court completely must be able to demonstrate why those procedures are unfair in order for the federal courts to displace the state remedy. And that's exactly what 1983 was designed to do. If you look at the decision in Monroe v. Pape, it said that 1983 was intended to provide a federal remedy where the state remedy is inadequate or unavailable in operation. And we will claim below that that is exactly what has happened here. I think the original framers of 1983 would be astounded by the breadth that is applied now. It was really part of Reconstruction, wasn't it? It was part of Reconstruction, that's for sure. Nevertheless, we have 100 years of jurisprudence to guide us here. I'll reserve the rest of my time unless there are any more questions. Okay, thank you very much, Mr. Katoubi. We'll have you back on rebuttal. And Mr. McLaughlin. Mr. McLaughlin, Mr. McLaughlin, I note that because of the nature of this action, it brings a different office in. If this was a habeas, the Erie County District Attorney would have this. Through my assistant solicitor position, I'm here. Because it's in 1983? Yes. And you're actually representing the only remaining defendant here is the court? The Erie County District Attorney. Is there any disagreement that the I think there was agreement, was it, that the commissioner correction should be dismissed or something? I believe Mr. Clem was dismissed from the case. Okay. But isn't there I'm not sure I won't charge you for this, but isn't there isn't there a question about the presence of the President Judge in this case? I'm not aware of that. Okay. Let me find that. But I thought that the magistrate judge found that the proper defendant was the Court of Common Pleas. I do not have the magistrate judge's decision in front of me, Your Honor, but I do not personally recall that. So you're here on behalf of Erie County? I'm here on behalf of Erie County District Attorney. All right. Good. Mr. Laughlin, let me be very frank with you. I think in 30 years most people would probably say many of my opinions have been somewhat conservative, but I would find it difficult to embrace a system of jurisprudence that would allow an innocent man, not saying this defendant's innocent, but allow an innocent man to languish in prison and deny him access to DNA evidence that could prove his innocence. If we don't have a system that allows that, what's our system worth? I totally sympathize with your position, Your Honor. In this particular instance, Judge Dimitrovich in the lower court I believe in reviewing an appeal of denial of his PCRA petition after hearing specifically found that this gentleman had the opportunity had counsel who he discussed obtaining the DNA rape kit with and that they made a decision not to go forward. Maybe because there were three rapes. One attempted rape and two rapes of his... I'm familiar with And so he did have the opportunity in this case and he along with counsel decided not to pursue that. Several years after the convictions, he now wants the rape kits and we believe that obviously that runs afoul of the post-conviction relief mandate that they cannot get those where there's been a pre-charge confession and that is still good law as of yesterday. I believe the superior court decision came down in favor of the law as it stands and as of yesterday the Supreme Court of Pennsylvania has not overturned that. Factually, these cases are factually intensive and we recognize that. With regard to the broader question before us of creating a right under 1983 I just find it difficult to say that there wouldn't be situations where a person should have the right Suppose you just have a district attorney that's just not going to give him what he's seeking. You know, I mean... I understand that, Your Honor. I believe the Supreme Court in Osborne indicated that there was no substantive due process right under 1983. Well, they kind of qualified it. They kind of hinted that generally, but there can be. Didn't they sort of say that? I forget the exact language. I don't have it here. They modified it a little bit. And I believe this court in Young v. Philadelphia County District Attorney's Office in August dismissed a similar case. I don't know if the threshold issue was addressed but it was dismissed based upon the holding in Osborne that there's no substantive due process right to post-conviction DNA per the Osborne decision. But isn't this case Isn't the issue that's before us today more fundamental? I think that's what Judge Van Antwerpen was getting to. The question is if there is some right and the Supreme Court has not per se eliminated all potential rights. If there is some right under these circumstances, Mr. Greer does have the right to bring a 1983 action to get access. And that's really all he's asking for at this point is access to that DNA. And isn't the question whether or not the Supreme Court's jurisprudence allows this 1983 versus a habeas? Isn't that really the sole question we have? I think so, Your Honor. I think that the habeas petition would be the appropriate method to attempt to obtain that. But why not a 1983? Why does this request for access only necessarily indicate the invalidity of the underlying conviction? Well, I would say that pre-Osborne I think this Court in Thomas versus Leach in a situation where an individual, I believe, was convicted of murder and he was seeking post-conviction police reports. This Court denied that 1983 or dismissed that 1983 claim recognizing that it was just 1983 action was being used as a discovery tool to obtain evidence that ultimately would call into question the validity of the state court conviction. And I understand a lot of water's gone under the bridge since then and Osborne's come up, but that would be our point. We certainly understand the split in the circuits and we certainly understand that the Supreme Court recognized that in Osborne and recognized the trend that Appellant's Counsel on this threshold issue has relied upon. If we create this right, should we limit it just to DNA evidence? It seems like it would create a slippery slope to me. And you're going to get every request under the sun based upon that precedent and the parameters. That hasn't been the experience in the other circuits in the 2nd and 7th. I don't know. I was a district judge before that. I spent 17 years handling habeas corpus. There's no need to tell me what can happen. I would expect that it would open the floodgates a bit and that the parameters of 1983 would be widened. But if it were to be remanded back to Judge Koval at this point in time and under the same circumstances, based upon what authority would Judge Koval be able to compel the Erie County District Attorney's Office to produce the rape kit? That would be our question. We would say the current state of the law would probably be that he could not. Based upon the Pennsylvania statute and the Superior Court rulings? Does that come into play here? I think the Superior Court right now in the state of the law is that if you pre-charge have confessed to the crime, you're not entitled to the DNA rape kit or DNA evidence. So unless that were overturned, I don't see, and he specifically alleged in his 1983 complaint, a substantive due process right violation. But that was pre-Osborne. He filed that, I believe, in 2005. I mean, that was pre-Osborne Supreme Court decision. Well, all that's really before us is whether or not you can use 1983. What may happen in the future isn't really before us at this point, is it, really? No, except that I think that we would argue that if it went back, we'd file a motion for summary judgment and it would be an exercise. It's going to come back again. Do you have anything else to add, Mr. Van Valken? No, Your Honor. All right, well, thank you very much for being here. Mr. Katube? Your Honor, one thing I did want to draw the court's attention to was exactly, we talk a lot about exactly what will this cause of action look like in the court below. And I wanted to direct the court to Justice Roberts' opinion in Osborne. There's one paragraph that very concisely says, what is the standard here? And that's in the slip opinion on pages 15 and 16. He said, the question in this case is whether Osborne's claim within the framework of the state's procedures for post-conviction relief offends some principle of justice or transgressed any recognized principle of fundamental fairness. Then he said, federal courts may upset the state's post-conviction relief procedures if they are fundamentally inadequate to vindicate the substantive rights provided. The state of the law in Pennsylvania right now... You just found the language I was looking for. That's the standard. That's the standard. There's several reasons that are important about that. The state of the law in Pennsylvania with the confession bar is still the state of the law. Significantly, Commonwealth's attorneys have conceded in their briefs that the confession bar is legal error. If the state Supreme Court goes along with that, we'll have a situation where my client is being denied DNA access based on a law that both the Commonwealth and the state Supreme Court says to be wrong. This is a paradigmatic case that Justice Roberts left open that could succeed post-Osborne. So you're basically saying with that statement that the legislature of a sovereign state, Pennsylvania, could not decide when DNA could be provided post-conviction. Under what circumstances? You're basically saying that that is a right that's more properly decided by the federal court. Absolutely not. That would run afoul of Osborne. That was William Osborne's problem. The states absolutely have a right to do it. Yet there is a federal floor. They can't make a rule that says, we're going to base DNA access based on race. Based on religion, of course. We're going to arbitrarily deny it for everyone wearing a blue shirt. That's what the federal courts are here for. What about a rule that says we're going to deny it to people who had a right and opportunity to get it and chose not to get it and now 15 years later want it? That's a question of the waiver issue. That's a question that will have to be decided below, that's for sure, as a part of the constitutional claim. One thing that the waiver issue also raises is that it's an additional reason why this court shouldn't reach a constitutional question because there are real factual disputes in this record as to whether my client requested the DNA evidence at trial, what his counsel did at trial. There are statements in the record from his counsel saying, oh, we talked about it. And there are statements from his counsel saying, oh yeah, I tried to get it. So there's a real factual dispute in that issue and that will be central to the proceedings below, that's for sure. But it's not central here. The issue here is simply whether there is a cause of action. We believe Osborne reserved that cause of action. We believe that the jurisprudence of the Supreme Court makes this action cognizable under 1983. Okay, thank you. Papalese just said file a 2254 and your answer to that is? Well, 2254, the habeas statute, is reserved for people alleging that they are in custody in violation of the Constitution. It's hard to make that argument if you find out from the DNA testing that your client's guilty. Exactly. As I stand here today, without the evidence, without testing the evidence, without getting that result back, we don't have a habeas claim. It would be Kafkaesque to tell us here, go under habeas, only to let us find out you don't have a habeas claim. Even if we did have a habeas claim, we'd be bringing an actual innocence habeas claim, which is up in the air in the Supreme Court right now, whether that even exists. That's why this is a 1983 action. Okay, Mr. Katoubi, I did one final question for you. Is that Mr. Goetz with you at counsel table? No, it isn't. Mr. Bailey. Okay, Mr. Goetz was the person who our record show was appointed as pro bono counsel in this case. Right. He's been on the briefs and been our partner supervisor, if you will. Okay. Well, I want to, on behalf of the court, I want to thank you and the others at Jones Day for agreeing to take this case pro bono. It's been our pleasure. And for the quality of the representation that you've provided. Thank you.